■ In the Matter of the Estate of L. EDWARD DUPUY, Deceased. AVA M. DUPUY et al., Appellants-Respondents; DOROTHY SABBAGH et al., Respondents-Appellants.— In a proceeding for judicial settlement of the account of the two

coexecutrices, in which a construction of the will was requested by two objecting legatees, who are sisters of the testator, (1) the coexecutrices and said legatees cross-appeal from stated portions of a decree of the Surrogate's Court, Queens County, entered May 3, 1967, which determined the proceeding and (2) said legatees also appeal from a decree of said court entered October 10, 1966, which awarded to the attorney for the coexecutrices an additional fee of $14,000. The appeal by the coexecutrices is from so much of the decree entered May 3, 1967 as (1) construed the will as providing that, after the payment of debts, funeral and administration expenses, the testator's widow (coexecutrix Ava Marie Dupuy) is entitled to one half of the net estate and the testator's sisters are entitled to the other one half of the net estate, but that all estate taxes shall be paid out of the sisters' share; (2) awarded the attorneys for the sisters $7,500 for services rendered in connection with the construction of the will, plus $669.10 for disbursements; (3) apportioned to the widow the inheritance taxes on the proceeds of certain life insurance policies on the testator's life; and (4) directed distribution of the remainder of the estate, including income, to the three legatees. The cross appeal by the legatee-sisters from the decree entered May 3, 1967 is from all thereof except insofar as it (1) construed the will; (2) directed distribution; and (3) sustained the objections to the account. Decree dated May 3, 1967, insofar as appealed from, modified as indicated herein, on the law and the facts, and proceeding remitted to the Surrogate's Court, Queens County, for further proceedings and entry of a decree not inconsistent with the determination herein. As so modified, decree affirmed insofar as appealed from, with costs payable out of the estate to all parties filing separate briefs. Findings of fact inconsistent herewith are reversed and new findings of fact are made as indicated herein. Decree dated October 10, 1966 affirmed, without costs. In article " FIRST " of the will, the testator directed that all of his debts and funeral and administration expenses be paid by his executors " as hereinafter stated ". In article " SECOND ", he bequeathed and devised one half of his " net estate " to his wife and the remaining one half of his " net estate " to his two sisters in equal shares, and further provided: " I direct, however, that my debts, charges, expenses and taxes against my estate be paid out of the second half of my estate before payment of the bequest and devise to * * * [the sisters] as heretofore recited." The Surrogate determined that the widow is entitled to one half of the net estate after the payment of debts and funeral and administration expenses and that the testator's sisters are entitled to the other one half of the net estate, but that all estate taxes shall be paid out of the sisters' one half share of the estate. The prime consideration in all construction proceedings is the intention of the testator as expressed in the will. If the testator's intention is not clear, then it "must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (Matter of Fabbri, 2 N Y 2d 236, 240 [emphasis supplied]). In our opinion, a reading of the will indicates that the testator intended that his wife was to receive her one-half share of his estate free from the burden of debts, expenses and estate taxes. That this was the intent of the testator seems clear from a reading of article " SECOND " of the will and there would be no problem presented, except for the inclusion of the word "net" in said article of the will. However, although the careless or inapt use of language may create difficulty in ascertaining the testator's intention, such language must be subordinated to the dominant purpose as revealed by a reading of the will in its entirety (Matter of Miner, 146 N. Y. 121). "If a reading of the entire will reveals a 'dominant purpose or plan of distribution', the individual parts must be

interpreted in the light of that purpose, and be given effect accordingly, despite the fact that a literal reading might yield an inconsistent meaning because of the language or format employed" (*Matter of Larkin*, 9 N Y 2d 88, 91). The use of the word "net" is not of sufficient import to change the otherwise clear expression of the testator's intention that his sisters be responsible for the payment of all "debts, charges, expenses and estate taxes" out of their share of the estate. Moreover, the circumstance that the debts at the time of the testator's death were far in excess of the existing debts at the time of the execution of the will, thereby greatly reducing the share of the testator's estate to which his sisters are entitled, is not a factor to be considered in determining the testator's intent at the time of the execution of the will or in the enforcement of the plainly worded will (*Matter of Tamargo*, 220 N. Y. 225). Accordingly, construction is directed in accordance with this decision. Although a number of other issues have been raised by the respective parties on these appeals, it is our view that only two of them have merit. The coexecutrices contend that the allowance of $669.10 made to the attorneys for the legatee-sisters was excessive. We are in accord therewith, and conclude that the allowance should be reduced to $136.50, which would reimburse the attorneys for the disbursements made in connection with the construction matter. We are of the further opinion that the legatee-sisters, who are obligated to pay all estate taxes, are entitled to the benefits which would have resulted if the expenses, charges and other items which were deducted in the fiduciary income tax returns filed by the coexecutrices but which would otherwise have been available as deductions on the estate tax return had been deducted for estate tax purposes (Cf. *Matter of Levy*, 9 Misc 2d 561; *Matter of Warms*, 140 N. Y. S. 2d 169). In addition, there appears to be merit to the claim that, as the result of the manner in which the coexecutrices handled the matter of estate taxes, the amount thereof was increased by assessments, penalties and interest. Since, on the present record, we are unable to determine the precise amounts for which the legatee-sisters should receive credit, further proof on these issues should be taken by the Surrogate. Beldock, P. J., Brennan and Hopkins, JJ., concur; Benjamin, J., concurs in part and dissents in part and votes to modify the decree entered May 3, 1967 as hereinafter indicated, with the following memorandum in which Rabin, J., concurs: I agree with the majority insofar as it (a) modifies the decree entered May 3, 1967 with respect to the $669.10 disbursement allowance to the attorneys for the sisters and (b) gives the sisters the benefits which would have resulted if the described items deducted in the fiduciary income tax returns had instead been deducted in the estate tax return. I also agree that the sisters are entitled to some credit for assessments, penalties and interest on the estate tax, and that further proof is required to determine the amount of such credit. However, I disagree with the majority's construction of the will, which imposes upon the sisters' one half of the "net" estate the burden of paying all debts of the testator. As I read this will, its scheme was to divide the estate into two equal parts, with one half of the "net estate" going to the wife and the other one half of the "net estate" going to the sisters. The critical question is the meaning of the words "net estate" and "debts", in view of the provision that "debts, charges, expenses and taxes" be paid out of the bequest of "one half of my net estate" to the sisters. Put differently, the question is whether "debts" means all debts of the testator, including capital debts, or whether it means only non-capital debts. As the term "net worth" is used in the market place by businessmen, it means business assets less business liabilities or debts. This testator was a businessman and investor and the only reasonable inference is that he must have used the words "net estate" in his will in that sense, i.e., in the sense that "net

worth" is used on a business balance sheet. If he so used the words "net estate", the $150,000 that he borrowed to finance the purchase of property, after this will was executed, was a capital debt that must be deducted from his gross estate, not from the one half of the "net estate" bequeathed to the sisters. This is so because that $150,000 increased his gross estate and simultaneously increased his debts by the same amount; and his "net estate" then would be his thus-enhanced gross estate, less the borrowed money by which it had been enhanced. Stated differently, his "net estate" just after that loan was made was exactly the same as it was just before the loan was made, because the loan simultaneously increased both the assets and liabilities sides of his balance sheet by exactly the same amounts. Several illustrations will point up the correctness of this view and the incongruity of the majority's view. If the testator's estate consisted of realty worth $100,000, subject to a $50,000 mortgage, the majority construction would result in a gift of the entire "net estate" to the widow, with the sisters getting exactly nothing; under my construction, the widow would get $25,000, or "one half of" the "net estate", and the sisters the same, which would be exactly the distribution intended by this business-oriented testator. If the testator's estate consisted of a business with a net worth of $100,000, and he had bought $200,000 worth of merchandise on credit just before he died, the majority construction would give the wife $150,000 and the sisters only a liability of $50,000 (i.e., $150,000 less the capital debt of $200,000); under my construction, the widow would get $50,000, or "one half of" the "net estate", and the sisters the same, which would be exactly one half of the net worth of the business and exactly what this business-oriented testator had intended. If the testator's estate consisted of $100,000 worth of corporate shares bought on 50% margin, the majority construction would give the entire net estate to the widow, and the sisters would get exactly nothing; under my construction, the widow would get $25,000, or "one half of" the "net estate", and the sisters the same, which would be exactly the distribution intended by this business-oriented testator. In short, I would construe this will as providing that capital debts be deducted from the entire gross estate in order to determine the "net estate" to be divided equally between the widow and the sisters; as providing that only noncapital debts be charged solely against the sisters' share; and as providing that the $150,000 borrowed by the testator to purchase property be deducted from the entire gross estate in order to determine the net estate, and that it not be charged solely against the "one half of" the "net estate" bequeathed to the sisters. I agree with the majority that the decree entered Octobr 10, 1966 should be affirmed.